# RECEIVED

APR **2 8** 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


Troy B Jenkins

      Plaintiff

v.                                          Civil Action No. 1:08-cv-00057 (RMU)
                                            ECF


Navy-Marine Corps Court of Criminal Appeals

      Defendant

_____

TO THE HONORABLE , THE JUDGES OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

# Index of Supplement

Table of Cases, Statutes, and Other Authorities.............. ii

Statement of Jurisdiction...................................... 1

Statement of the Case......................................... 1

Statement of Facts............................................ 3

Assignments of Error

   I. THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED
      BY FINDING NO SUBSTANTIAL BASIS IN LAW OR FACT TO
      QUESTION APPELLANT'S GUILTY PLEAS TO RAPE AND
      FORCIBLE SODOMY ......................................... 7

  II. THE LOWER COURT ERRED BY FINDING THAT APPELLANT'S
      TRIAL DEFENSE COUNSEL WAS NOT INEFFECTIVE ............. 17

 III. THE PANEL OF THE LOWER COURT THAT CONDUCTED *DE NOVO*
      REVIEW OF THIS CASE ON REMAND WAS NOT "NEUTRAL AND
      DETACHED," BUT WAS TAINTED BY THE DECISION OF THE
      ORIGINAL PANEL THAT REVIEWED THIS CASE ................. 22

  IV. APPELLANT HAS BEEN DENIED HIS RIGHT TO SPEEDY
      APPELLATE REVIEW BY EXCESSIVE POST-TRIAL DELAY IN THE
      PROCESSING OF HIS CASE ................................. 25

   V. APPELLANT DID NOT VOLUNTARILY ENTER INTO PLEAS OF
      GUILTY TO HIS OFFENSES WHERE THE DNA EVIDENCE HE
      RELIED UPON IN REACHING HIS DECISION TO PLEAD GUILTY
      WAS CREATED BY A DNA EXAMINER WHO HAS SINCE CONFESSED
      TO FALSIFYING DNA RESULTS............................... 26

**Table of Cases, Statutes, and Other Authorities**

## United States Supreme Court

*Hill v. Lockhart*, 474 U.S. 52 (1985) ...................... 17, 21
*Strickland v. Washington*, 466 U.S. 668 (1984) .......... 17-18, 20

## Court of Appeals for the Armed Forces

*United States v. Adams*, 33 M.J. 300 (C.M.A. 1991) ....... 7, 13-14
*United States v. Alves*, 53 M.J. 286 (C.A.A.F. 2000) ........... 17
*United States v. Bonano-Torres*, 31 M.J. 175 (C.M.A. 1995) ..... 16
*United States v. Brinton*, 60 M.J. 343 (C.A.A.F. 2004) ........ 24
*United States v. Davenport*, 9 M.J. 364 (C.M.A. 1980) .......... 14
*United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) ......... 26
*United States v. Higgins*, 40 M.J. 67 (1994) .................... 7
*United States v. Jenkins*, 60 M.J. 27 (C.A.A.F. 2004) ....... 2, 26
*United States v. Kincheloe*, 14 M.J. 80 (C.M.A. 1982) ....... 22-23
*United States v. Pinero*, 60 M.J. 31 (C.A.A.F. 2004) ........... 24
*United States v. Prater*, 32 M.J. 433 (C.M.A. 1991) ...... 8, 13-14
*United States v. Schnable*, 60 M.J. 343 (C.A.A.F. 2004) ........ 24
*United States v. Scott*, 24 M.J. 186 (C.M.A. 1987) .......... 17-18
*United States v. Sell*, 60 M.J. 344 (C.A.A.F. 2004) ............ 24
*United States v. Tollinchi*, 54 M.J. 80 (C.A.A.F. 2000) ........ 16
*United States v.* , 60 M.J. 344 (C.A.A.F 2004) ................. 24

## Courts of Criminal Appeals

*United States v. Jenkins*, No. 200101151 (N-M. Ct. Crim. App.
  January 30, 2003) (unpublished op.) ........................... 2
*United States v. Jenkins*, 62 M.J. 582 (N-M. Ct. Crim. App. 2005)
  ..................................................... 2-3, 23-25
*United States v. Kelly*, 32 M.J. 813 (N.M.C.M.R. 1991) ...... 18-19

## Other Federal Courts

*United States v. Hall*, 93 F.3d 1337 (7th Cir. 1996) ........... 21

## State Courts

*Commonwealth v. Therrien*, 420 N.E.2d 897 (Mass. 1981) ......... 10
*State v. Collier*, 624 S.W.2d 30 (Mo. Ct. App. 1981) ........... 10

## Statutes

10 U.S.C. § 827 (2000) .......................................... 17
10 U.S.C. § 832 (2000) .......................................... 19
10 U.S.C. § 866 (2000) ........................................... 1

10 U.S.C. § 867 (2000) ........................................... 1
10 U.S.C. § 920 (2000) ........................................... 2
10 U.S.C. § 925 (2000) ........................................... 1
10 U.S.C. § 934 (2000) ........................................... 1

**Rules and Regulations**

MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Part IV, Paragraph
  45c (1)(b) .............................................. 14, 16
RULE FOR COURTS-MARTIAL 910 ................................. 7, 13
RULE FOR COURTS-MARTIAL 916 .................................... 8

**Other Authorities**

MILITARY JUDGE'S BENCHBOOK, DEPT. OF THE ARMY PAMPHLET 27-9 (30 Jan 1998) 8

### Statement of Jurisdiction

Appellant received a court-martial sentence that included a punitive discharge and confinement of greater than one year. Accordingly, his case fell within the lower court's Article 66, Uniform Code of Military Justice, jurisdiction. *See* 10 U.S.C. § 866(b)(1) (2000). Appellant filed a timely petition for grant of review properly bringing his case within this Court's jurisdiction. *See* 10 U.S.C. § 867(a)(3) (2000).

### Statement of the Case

Appellant was tried by general court-martial, military judge alone, on November 29, 2000. After entering mixed pleas, he was convicted of rape, forcible sodomy and indecent acts with another, in violation of Articles 120, 125 and 134, UCMJ, 10 U.S.C. §§ 920, 925 and 934 (2000). The military judge sentenced Appellant to twelve years of confinement, forfeiture of all pay and allowances, reduction to the lowest enlisted pay grade and a dishonorable discharge. (Record at 185.) The convening authority approved the sentence as adjudged and, except for the dishonorable discharge, ordered it executed. (General Court-Martial Order Number 2-01 of June 15, 2001.) However, in an act of clemency, the convening authority suspended all confinement in excess of nine years for a period of five years from the date of the convening authority's action. (*Id.*)

1

The Navy-Marine Corps Court of Criminal Appeals reviewed the record and set aside the finding of guilty to the charge and specification of indecent acts with another and reassessed the sentence, approving so much of the sentence as included 138 months (11 ½ years) of confinement, reduction to pay grade E-1, total forfeiture of pay and allowances and a dishonorable discharge. *United States v. Jenkins*, No. 200101151 (N-M. Ct. Crim. App. January 30, 2003)(unpublished op.). This Court set aside the decision of the lower court, as the lower court's extensive verbatim copying of the appellate government's brief in its decision "left in doubt that appellant received the independent Article 66(c) review to which he was entitled." *United States v. Jenkins*, 60 M.J. 27, 29 (C.A.A.F. 2004). This Court remanded the case back to the Navy-Marine Corps Court of Criminal Appeals for "a new Article 66(c) review before a panel comprised of judges who have not previously participated in this case." *Jenkins*, 60 M.J. at 30. In its *de novo* review on remand the lower court held that they were bound by their original decision to set aside findings of guilty to Charge III as multiplicious with Charge II. *United States v. Jenkins*, 62 M.J. 582, 587 (N-M. Ct. Crim. App. 2005). The court also set aside findings of guilty to Charge II in its decretal paragraph and reassessed Appellant's sentence, approving only 9 years of confinement. *Jenkins*, 62 M.J. at 597.

Appellant petitioned this Court for review on January 17, 2006.

## Statement of Facts

Appellant met CD for the first time during the early morning hours of August 5, 2000, when she hailed his car in a parking lot outside a local restaurant. (Record at 28-29.) Appellant and an acquaintance, Seaman (SN) Mark Metcalf, U.S. Navy, had stopped at the restaurant to use the restroom. (*Id.* at 28.) CD was in the process of getting into another car, but upon seeing Appellant, flagged down Appellant's car instead. (*Id.*) CD immediately got into the back seat and asked Appellant and SN Metcalf to take her "to a hotel" or "anywhere." (*Id.* at 28-29.) After CD got into the car, SN Metcalf climbed into the back seat with her and the two began talking very softly to each other. (*Id.* at 30.) Appellant could not hear the substance of this conversation. (*Id.*) The three drove to SN Metcalf's apartment where Appellant was previously planning to spend the night. (*Id.* at 29-30.)

Upon arriving at the apartment, SN Metcalf and CD walked directly into SN Metcalf's bedroom. (*Id.* at 30.) Appellant went to the couch in the living room. (*Id.* at 26, 30.) After approximately fifteen minutes, CD left SN Metcalf's bedroom, walked past Appellant and headed down the hallway toward the front door to leave, and SN Metcalf came after her. (*Id.* at 31.) Appellant heard what he described as a "fall." (*Id.* at 27, 31.)

3

SN Metcalf then called for Appellant to come into the hallway. (*Id.*)

When Appellant arrived in the hallway, he saw CD sitting on the floor with her back against the wall. (*Id.* at 32.)  SN Metcalf had his hands between CD's "hips and her arms," and appeared to be pinning her against the wall. (*Id.*)  CD, however, was just "sitting there." (*Id.*)  She was not struggling, nor trying to leave. (*Id.*)  At this point, SN Metcalf told CD to perform oral sex on Appellant. (*Id.* at 33.)  CD took Appellant's penis in her left hand and began performing oral sex on him. (*Id.*)

After the encounter in the hallway, SN Metcalf led CD back into the bedroom. (*Id.* at 38.)  Appellant laid back down on the couch in the living room and went to sleep. (*Id.*)  Approximately fifteen to twenty minutes later, he awoke, hearing noises coming from the bedroom. (*Id.*)  Appellant initially stated that he heard CD moaning as if she was enjoying sexual activity. (*Id.* at 39.) However, after consultation with his defense counsel, Appellant changed his answer and stated that the moaning suggested CD was in pain. (*Id.* at 39-40.) Appellant went into the bedroom and saw SN Metcalf and CD on a mattress in the room. (*Id.* at 40.)  Appellant saw SN Metcalf ejaculate on CD's face. (*Id.* at 23, 41.)  SN Metcalf then got up and left the room. (*Id.* at 41.)  Appellant went over to CD, wiped her face, and told her that "she was a

lady." (*Id.* at 27, 41.) CD laid back down and she and Appellant engaged in sexual intercourse. (*Id.* at 23, 41.)

At no time during intercourse or oral sex did CD ever tell Appellant that she did not want to engage in the activity in question. (*Id.* at 25, 34, 41.) CD never said "no" or did anything to resist Appellant from engaging in oral sex or sexual intercourse. (*Id.* at 43.) CD did not try to "move, keep her legs closed, [or] push [Appellant] away." (*Id.*) At one point during their encounter, CD asked Appellant to get her a glass of water. (*Id.* at 42.) While Appellant was in the kitchen, CD jumped out through the bedroom window. (*Id.*)

Based on these facts, Appellant pled guilty, without a pretrial agreement, to rape and forcible sodomy. In an effort to establish the element of force for these charges, the military judge elicited from Appellant during the labored providence inquiry why he thought CD was not consenting to either oral sex or intercourse. (*Id.* at 34.) Appellant explained that he believed CD was not consenting because she was in fear for her safety. (*Id.* at 34-35.) This fear came from the fact that, in the hallway, SN Metcalf punched CD in the stomach and forced her to the ground. (*Id.* at 34-35.) However, Appellant did not witness this encounter between SN Metcalf and CD, and at the time of his activity with CD, Appellant did not know this had occurred. (*Id.* at 35, 44.) In fact, Appellant only learned of SN Metcalf's

5

behavior weeks later when he read a statement CD had given to investigators from the Naval Criminal Investigative Service (NCIS). (*Id.; see* Appellant' June 11, 2002 Motion to Attach Declaration of QM3 Troy Jenkins, U.S. Navy, dated June 6, 2002(hereinafter Declaration of Appellant)).

Appellant pled not guilty to the specification under Charge III. (Record at 10.) During its case on the merits, the government introduced, through an NCIS agent, a sworn statement Appellant made the day after his encounter with CD. (*Id.* at 53-70; Prosecution Exhibit 2.) The government also presented the testimony of CD. (Record at 72-98.) The military judge found Appellant guilty of the specification under Charge III, excepting the words "sexual intercourse and." (*Id.* at 106.) Thus, the military judge found Appellant guilty of engaging in oral sodomy with CD in the presence of SN Metcalf. (*Id.* at 108.)

SN Metcalf pled guilty to adultery and consensual sodomy. (*See* Staff Judge Advocate's Recommendation of 20 April 2001 at 3.) SN Metcalf was acquitted of all other charges including rape and forcible sodomy. (*See* Clemency Request of 12 April 2001 at Encl. 3.) SN Metcalf was sentenced to four months of confinement, to a reprimand, reduction to the pay grade of E-1 and a bad-conduct discharge. (*Id.*)

Additional facts necessary for the resolution of assigned errors are contained below.

## Assignments of Error

I

### THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED BY FINDING NO SUBSTANTIAL BASIS IN LAW OR FACT TO QUESTION APPELLANT'S GUILTY PLEAS TO RAPE AND FORCIBLE SODOMY.

"A providence inquiry into a guilty plea must establish, *inter alia*, 'not only that the accused himself believes he is guilty but also that the factual circumstances as revealed by the accused himself *objectively* support that plea.'" *United States v. Higgins*, 40 M.J. 67, 68 (1994) (emphasis added). If the accused raises matters during the providence inquiry that are inconsistent with his plea, including affirmative defenses, the military judge must either resolve the apparent inconsistency or reject the plea. *Id.* "If any potential defense is raised by the accused's account of the offense . . . the military judge *should explain such a defense* to the accused and should not accept the plea unless the accused admits facts which would negate the defense." RULE FOR COURTS-MARTIAL 910(e), Discussion, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.) (emphasis added); *United States v. Adams*, 33 M.J. 300, 302-03 (C.M.A. 1991). This Court must reject an accused's plea if there is a "substantial conflict between the plea and the accused's statements or other evidence of record." *United States*

7

*v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991). Appellant's pleas to rape in the present case are improvident because his answers during the providence inquiry gave rise to the defense of mistake of fact, and the military judge failed to explain this defense to Appellant or elicit facts that would negate the defense.

## A.  Mistake of Fact Defense.

For general-intent crimes such as rape and forcible sodomy, the defense of mistake of fact exists where, at the time of the activity in question, the accused possessed a subjective belief that the alleged victim was consenting to the act, and that belief was "reasonable under all the circumstances." R.C.M. 916(j)(1). The legitimacy of a mistake of fact defense depends on a careful analysis of the circumstances surrounding the act in question as well as the accused's state of mind **at the time of the act**. *See* Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9 at 747 (30 Jan 1998)(emphasis added). In Appellant's case, several facts established during the providence inquiry gave rise to the mistake of fact defense.

## 1.  Appellant's lack of knowledge concerning SN Metcalf's behavior.

First, Appellant was not aware, at the time of his encounters with CD, that SN Metcalf had displayed physical force against CD, or that this force caused her to fear for her safety and ultimately led her to acquiesce to encounters with Appellant.

8

(Record at 32-33, 35, 37, 44.)  The following colloquies highlight

Appellant's lack of knowledge regarding this fact:

> MJ:  What had Metcalf done to make her think that he
> might do something to her?
>
> ACC: *Once I read the statement of what she said happened
> in the hallway*, it said that he punched her in the
> stomach, he threw her to the ground, *all of which I did
> not see*, I just know I heard a fall.  I saw him trying
> to hold her down, pinned up against the wall.
>
> . . .
>
> MJ:  Was there any kind of intimidation or threat of
> death or physical injury that made her just lie there
> and let you do that or was it because she wanted to?
>
> ACC: No, sir.  I didn't intimidate her.  I didn't
> threaten her.  *All of what Metcalf did, that's why she
> was at the point to where she was just submissive and
> she was just giving in.*  She didn't resist.
>
> MJ:  Did you realize that's why she wasn't resisting?
>
> ACC: *At the time, no sir, I didn't.*

(*Id.* at 35, 44 (emphasis added)).  Although Appellant observed CD

apparently trying to leave the apartment at one point, he did not

see SN Metcalf display any violence towards CD to prevent her from

leaving.  (*Id.* at 35.)  This fact is critical as it was SN

Metcalf's behavior that supplied the "by force" element of both

the rape and forcible sodomy charges.  If Appellant was not aware,

at the time of his activities with CD, of SN Metcalf's violent

behavior then Appellant had a viable defense of mistake of fact.

While Appellant has found no military case addressing this

specific issue, he acknowledges that, in general, a third party

can supply the threats of harm to overcome a victim's will and
thereby satisfy the "by force" elements of rape and forcible
sodomy.  However, the accused must, at the time of the offense,
have knowledge of the threats and be aware that it is this
behavior that is causing the victim to submit to the acts in
question.  *See Commonwealth v. Therrien*, 420 N.E.2d 897, 902
(Mass. 1981) ("If the victim appears to consent to intercourse
because of a threat of a third person or because of fears arising
from actions of a third person, and a defendant knew of those
threats or of the circumstances causing those fears, such a
defendant could properly be found guilty of rape."); *State v.
Collier*, 624 S.W.2d 30, 35 (Mo. Ct. App. 1981) ("[F]ear [of
physical violence] may be caused by the acts of one other than the
defendant if the defendant at the time had knowledge that his
victim was submitting [to intercourse] through fear.").  In
Appellant's case, he was not aware, at the time of his encounters
with CD, of SN Metcalf's violent behavior, or that CD was
submitting to the activity in question with Appellant because she
feared for her safety.  (Record at 35, 44.)  Furthermore, none of
the circumstances surrounding his encounters with CD reasonably
indicated that CD was submitting out of fear.

**2. Circumstances surrounding Appellant's conduct with CD.**

In addition to the fact that Appellant was not aware of SN
Metcalf's violent behavior, the circumstances surrounding his

10

encounters with CD also gave rise to the mistake of fact defense.
Several statements made during the providence inquiry demonstrate,
in the aggregate, not only that Appellant believed CD was
consenting to intercourse, but that this belief was reasonable
under the circumstances:

> MJ:  Okay.  So when you picked [CD] up in the parking
> lot, then you and she went over to Metcalf's apartment?
>
> ACC: Yes, sir.  He was in the car at the same time.
>
> . . .
>
> MJ:  Okay.  So you three decided to go to his apartment?
>
> ACC: Yes, sir.
>
> MJ:  Any discussion about what you were going to do when
> you got there?
>
> ACC: No, sir . . . Metcalf was in the passenger seat.
> He jumped into the back seat where [CD] was.  They had a
> conversation.  What they were talking about – I don't
> know what they were talking about because they were
> talking very soft.  We got back to the apartment . . .
> Metcalf, [CD] were already walking up the steps to his
> apartment.  I was the last person to come in.  He walked
> straight to his bedroom.  She walked behind him.  They
> went into the bedroom.  I went to the couch.
>
> MJ:  So immediately upon arriving at Metcalf's
> apartment, Metcalf and [CD] went into his bedroom?
>
> ACC: Yes, sir.

(Record at 30.)  The following statements describe the
circumstances of Appellant's encounters with [CD]:

> MJ:  What makes you think she didn't consent to
> [intercourse with you]?
>
> ACC: She never said I could.

MJ:  Well, did she ever say that you couldn't?

ACC: No, sir.  She didn't.

(*Id.* at 25.)
    . . .

MJ:  Did she say anything to you [during intercourse]?

ACC: No, sir.

(*Id.* at 35.)
    . . .

MJ:  She give you any indication that she wanted to have
sex with you?

ACC: No, sir.

MJ:  She give you any indication she didn't want to have
sex with you?

ACC: No, sir.

(*Id.* at 41.)
    . . .

MJ:  Okay.  So did she do anything to actively resist
you having sex or oral intercourse with her?  She try to
move, keep her legs closed, push you away?

ACC: No, sir.

MJ:  Tell you no?  Anything like that?

ACC: No, sir.

(*Id.* at 43.)  Based on these answers, CD gave no indication that
she did not want to engage in the behavior in question with
Appellant.  Given that Appellant had no knowledge that CD was
apparently in fear for her safety at the time in question, the

conduct described above reasonably raises the defense of mistake of fact.

## B. **Military judge's failure to discuss the mistake of fact defense on the record.**

If the facts elicited during a guilty plea raise the possibility of an affirmative defense, the military judge should explain the defense to the accused, and not accept the plea unless the accused admits facts that negate the defense. *Adams*, 33 M.J. at 302-03; *Prater*, 32 M.J. at 436. Based on the facts described above, the military judge in the present case should have explained to Appellant, on the record, the defense of mistake of fact and, if possible, elicited facts from Appellant which negated the defense. R.C.M. 910(e), Discussion. Failure to do this renders the plea improvident. *See Adams*, 33 M.J. at 302-03. The fact the military judge asked Appellant's trial defense counsel whether she explored the possibility of a mistake of fact defense, and received assurances from her that such a defense did not exist, Record at 44-45, does not satisfy the mandate in *Adams* that the military judge raise the issue on the record with the accused and elicit facts from the accused negating the defense. *Id.*

In *Adams*, the appellant stated facts during his providence inquiry that suggested the possibility of a mistake of fact defense. *Id.* at 301. Despite the fact that the military judge discussed this matter on the record with the appellant, this Court

13

held that because the military judge "failed to explain the defense and did not ascertain whether [the appellant] was asserting it," he "failed to establish the providence of the pleas on the record." *Id.* at 302-03. The government argued that the military judge's error was non-fatal, because the potential defense was neither honest nor reasonable. *Id.* at 303. However, the Court concluded that

> [the appellant's] version [was] not so outlandish as to be absurd . . . Under such circumstances, neither the military judge nor an appellate court should reject [the appellant's] claim as unreasonable as a matter of law. Instead, that evaluation is one for the trier of fact.

*Id.*

Similar to the scenario in *Adams*, Appellant's statements during providency were "not so outlandish to be absurd," and could have provided a legitimate mistake of fact defense into which the military judge had a duty to inquire. The military judge's failure to question Appellant about the possibility of a mistake of fact defense, or to even explain a mistake of fact defense, raises a substantial basis to question Appellant's guilty pleas and renders these pleas improvident. *Prater*, 32 M.J. at 436.

## C. APPELLANT'S PROVIDENCE INQUIRY FAILED TO ESTABLISH THAT THE ACT OF INTERCOURSE WITH CD WAS COMMITTED WITH FORCE, ACTUAL OR CONSTRUCTIVE, OR WITHOUT THE CONSENT OF CD.

A charge of rape requires that intercourse be committed "by force and without consent." MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Part IV, Paragraph 45(b)(1); *United States v.*

14

*Davenport*, 9 M.J. 364, 367 (C.M.A. 1980). Based on the providence inquiry, SN Metcalf provided the only display of force displayed against CD. (Record at 35.) Appellant never threatened or intimidated CD. (*Id.* at 44.) There was no evidence SN Metcalf was present in the room when Appellant and CD engaged in intercourse, or directed CD to have intercourse with Appellant as he had directed her to perform oral sex upon Appellant. (*Id.* at 41-42.) Given that SN Metcalf was the sole source of the force element, his absence, alone, eliminates the possibility that the intercourse was committed "by force." Additional statements by Appellant during providency, however, further negate his agreement that the act was committed by force, either actual or constructive, or without consent. For example, when Appellant came over to CD in the bedroom she voluntarily "laid back down" on the bed. (*Id.* at 23, 40-41.) It was at this point that she and Appellant proceeded to have intercourse. (*Id.* at 23, 40.) CD did not protest during this encounter. (*Id.* at 25, 41, 43.) She did nothing to actively resist intercourse, nor did she tell Appellant "no." (*Id.* at 43.) Additionally, CD was aware it was Appellant and not SN Metcalf engaging in intercourse with her. (*Id.* at 41.) Finally, during intercourse, CD asked Appellant to get her a glass of water, demonstrating that she did not lack the mental faculties to manifest her lack of consent. (*Id.* at 42.) At that point, Appellant voluntarily ceased intercourse and went into the kitchen

to get the water.  (*Id.*)  As CD possessed the ability to manifest
a lack of consent to intercourse, and there was no evidence that
such a manifestation would have been futile, the law required CD
at the time of her encounter with Appellant, to manifest her lack
of consent.  M.C.M., Part IV, Paragraph 45c (1)(b); *United States
v. Tollinchi*, 54 M.J. 80, 82 (C.A.A.F. 2000).

     In *Tollinchi*, this Court held that "where there is no
constructive force and the alleged victim is fully capable of
resisting or manifesting her non-consent, more than the incidental
force involved in penetration is required for conviction."
*Tollinchi*, 54 M.J. at  82 (quoting *United States v. Bonano-Torres*,
31 M.J. 175, 179 (C.M.A. 1990).  Here, Appellant asserted that
constructive force was applied by SN Metcalf, causing CD to submit
to intercourse with him, Record at 44, but this force consisted
solely of the earlier acts of preventing CD from leaving the
apartment and forcing her to the ground.  (Record at 41-42.)
These acts by SN Metcalf did not make resistance to Appellant
"futile," or amount to "threats of death or great bodily harm"
during the later intercourse between Appellant and CD where SN
Metcalf was not present.  *See* M.C.M., Part IV, Paragraph 45c
(1)(b), *supra*.  Thus, CD's lack of manifestation of non-consent to
intercourse with Appellant, alone, in addition to contributing to
Appellant's mistake of fact, made the Appellant's pleas
improvident.

WHEREFORE, this honorable Court should grant review of this issue as the lower court has decided a question of law in conflict with applicable decisions of this Court.

II

**THE LOWER COURT ERRED BY FINDING THAT APPELLANT'S TRIAL DEFENSE COUNSEL WAS NOT INEFFECTIVE BY FAILING TO INVESTIGATE THE FACTS OF APPELLANT'S CASE AND BY CONCEDING HIS GUILT DURING SENTENCING WITHOUT HIS PERMISSION.**

Every military accused has a statutory and constitutional right to effective legal representation. *See* Article 27(a), Uniform Code of Military Justice, 10 U.S.C. § 827 (2000); *United States v. Scott*, 24 M.J. 186, 187-88 (C.M.A. 1987). To prevail on a claim of ineffective assistance of counsel, an accused must show (1) that his counsel's performance was deficient; and (2) that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Scott*, 24 M.J. at 188. This two-part test also applies to guilty plea cases. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *United States v. Alves*, 53 M.J. 286, 289 (2000).

In the present case, Appellant was denied effective assistance of counsel because his attorney failed to investigate the circumstances of Appellant's sworn statement, which would have revealed the defense of mistake of fact, and failed to recognize

17

that Appellant's answers during the providence inquiry raised the
mistake of fact defense.

**A.  Counsel's deficient performance.**

Under the deficiency prong, "[t]he competence of counsel is
presumed." *Scott*, 24 M.J. at 188.  This presumption is overcome
if the counsel's performance falls "below an objective standard of
reasonableness." *Strickland*, 466 U.S. at 688.  To prevail on a
claim of ineffective assistance of counsel, an accused must show
that his counsel made specific errors which were unreasonable
under prevailing professional norms.  *Scott*, 24 M.J. at 188.
Appellant's trial defense counsel was deficient in that she failed
to investigate the circumstances of his sworn statement, and
failed to recognize the viability of a mistake of fact defense.

**1.  Failure to investigate.**

A "counsel has a duty to make reasonable investigations or to
make a reasonable decision that makes particular investigations
unnecessary." *Strickland*, 466 U.S. at 691; *Scott*, 24 M.J. at 188.
**"[I]nvestigation is an essential component of the adversary
process."** *Scott*, 24 M.J. at 188 (emphasis added).  The
adversarial process typically will not function properly if the
defense counsel fails to investigate his or her client's case.
*Id.*  Furthermore, a trial defense counsel has a responsibility to
discuss with his or her client the meaning and effect of pleading
guilty.  *United States v. Kelly*, 32 M.J. 813, 819 (N.M.C.M.R.

1991).  Unless the counsel has investigated the facts of the case,
he or she cannot provide sound legal advice on whether an accused
should plead guilty.  *Id.*

In Appellant's case, defense counsel made no investigation
into Appellant's sworn statement.  (*See* Declaration of Appellant.)
Defense counsel did not discuss with Appellant the circumstances
under which he gave the statement, or discuss with him the basis
for his knowledge concerning the information contained in the
statement.  (*Id.*)  Additionally, Appellant's counsel ignored his
requests to discuss potential ways of suppressing his statement.
(*Id.*)  She did not interview the investigating agent from the
Naval Criminal Investigative Service (NCIS).  (*Id.*)  She also
advised Appellant to waive his right to a hearing under Article
32, UCMJ, 10 U.S.C. § 832 (2000), thereby forfeiting the
opportunity to examine the NCIS agent under oath about the
circumstances of Appellant's statement.  (*Id.*)  Had defense
counsel performed any one of these tasks, she would have
ultimately discovered that Appellant did not know of SN Metcalf's
behavior toward CD until after his encounter with CD.  (*Id.*)
Appellant learned of SN Metcalf's behavior only when he read the
results of CD's statement indicating that SN Metcalf punched her
in the stomach and forced her to the ground.  (*Id.*; Record at 35.)
Appellant's lack of knowledge regarding SN Metcalf's behavior
raised the possibility of a mistake of fact defense.

Defense counsel's failure to investigate the circumstances surrounding Appellant's statement falls below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688. Appellant's statement was the government's strongest piece of evidence in this case. Given its importance, defense counsel should have taken reasonable steps to determine the statement's accuracy and reliability. Defense counsel took no steps. Instead, she simply accepted the statement at face value, and based on it, advised Appellant to plead guilty without the benefit of a pretrial agreement. This was constitutionally deficient under *Strickland*.

### 2. **Appellant's statements during the providence inquiry**.

Appellant unequivocally stated at trial that he did not see SN Metcalf act violently towards CD. (Record at 35.) He only learned of SN Metcalf's behavior *after* he read CD's statement to NCIS. (*Id.*) Additionally, Appellant stated that at the time of intercourse with CD he did not realize that she was submitting because of SN Metcalf's violent behavior towards her. (*Id.* at 44.) Given the lack of any objective indication on CD's part that she was not consenting to the conduct in question, Appellant had a legitimate mistake of fact defense. The military judge apparently suspected this as he asked Appellant's defense counsel if she explored the possibility of a mistake of fact defense. (Record at 44-45.) Although defense counsel stated that she did not believe

this defense existed, there is no evidence she did explore this

defense.  *See* Declaration of Appellant.

Based on Appellant's answers demonstrating his lack of knowledge

regarding SN Metcalf's behavior and describing CD's acquiescence,

his counsel should have reasonably realized that he had a

legitimate mistake of fact defense and, at a minimum, asked for a

recess to discuss this defense with Appellant.  Failure to

recognize this defense fell below an objective standard of

reasonableness.  *Hill*, 474 U.S. at 57.

## B.  **Prejudice to Appellant**.

To demonstrate prejudice in the context of a guilty plea, an

appellant "must show that there is a reasonable probability that,

but for counsel's errors, he would not have pleaded guilty and

insisted on going to trial."  *Id.* at 59.  In the present case,

Appellant indicates in his declaration that, had his counsel

informed him of the availability of the mistake of fact defense,

he would have pleaded not guilty to the allegations of rape and

forcible sodomy, and insisted on going to trial on those charges.

(*See* Declaration of Appellant.)  This is true even if defense

counsel informed Appellant of the defense during trial.  (*Id.*)  As

Appellant accurately states, since he did not have a pretrial

agreement, he would have had "nothing to lose" in contesting the

case if he thought there was a chance he might succeed.  (*Id.*)

However, defense counsel indicated from the beginning that the

21

government's case was "a prosecutor's dream," and that it would be best if Appellant pled guilty, even without a pretrial agreement, in an effort to obtain leniency from the military judge.  (*Id.*) Defense counsel never informed Appellant of the possibility of the mistake of fact defense.  (*Id.*)  Overall, if Appellant's defense counsel properly advised Appellant of the viability of the mistake of fact defense, Appellant would not have pled guilty, and instead, insisted on going to trial.  (*Id.*)  Given this, defense counsel's deficient performance prejudiced Appellant, as the results of SN Metcalf's contested trial for rape and forcible sodomy indicates.

WHERFORE, this honorable Court should grant review of this issue as the lower court has decided a question of law in conflict with applicable decisions of this Court and the Supreme Court of the United States.

### III

**THE PANEL OF THE LOWER COURT THAT CONDUCTED *DE NOVO* REVIEW OF THIS CASE ON REMAND WAS NOT "NEUTRAL AND DETACHED," BUT WAS TAINTED BY THE DECISION OF THE ORIGINAL PANEL THAT REVIEWED THIS CASE.**

This Court has held it axiomatic that "no judge can participate in the adjudication of a case if he is not 'a neutral and detached judge.'" *United States v. Kincheloe*, 14 M.J. 40, 48

(C.M.A. 1982)(citations omitted).  Further, "the court's actions and deliberations must not only be untainted, but must also avoid the very appearance of impurity."  *Id.*  Addressing *appellate* judges specifically, this Court held that "any relationship of a judge of the Court of Military Review which casts suspicion upon his fairness or impartiality provides a basis to seek his disqualification."  *Id.*  The test the Court thus announced for bias requiring disqualification of appellate judges is "whether a reasonable person who knew all the facts would question [the judge's] impartiality."  *Id.* at 50.  However, an allegation of partiality must be supported by facts or some kind of probative evidence that would warrant a reasonable inference of partiality on the judge's part.  *Id.*

In the case at bar, the original decision of the Navy-Marine Corps Court of Criminal Appeals was set aside by this Court because "the text of [the] previous opinion included verbatim replication of substantial portions of the Government's Answer without attribution. . .[a]fter reviewing [the] decision, the court stated that it was 'left in doubt that [the] [a]ppellant received the independent Article 66(c) review to which he was entitled.'"  *United States v. Jenkins*, 62 M.J. 582, 584 (N-M. Ct. Crim. App. 2005)(quoting this Court's opinion in *United States v. Jenkins,* 60 M.J. 27, 29 (C.A.A.F. 2004)).  Based on this Court's decision in *Jenkins*, at least sixteen other decisions of the Navy-

Marine Corps Court of Criminal Appeals have been set aside and

remanded to the lower court for *de novo* review.    *See, e.g., United*

*States v. Pinero*, 60 M.J. 31 (C.A.A.F. 2004); *United States v.*

*Schnable*, 60 M.J. 343 (C.A.A.F. 2004); *United States v. Brinton*,

60 M.J. 343 (C.A.A.F. 2004); *United States v. Sell*, 60 M.J. 344

(C.A.A.F. 2004).

Given the far-reaching impact of this Court's *Jenkins*

decision, the new panel of the lower court is understandably

defensive when it states in its decision on remand:

> In spite of the fact that this court specifically stated
> that it had conducted our review in accordance with
> Articles 59(a) and 66(c), UCMJ, and had dismissed Charge
> III and its specification on a different legal theory
> than had been advanced by the appellant, our superior
> court concluded that it could not determine that the
> appellant had "received the 'awesome, plenary, and de
> novo' review to which he was entitled by law."

*Jenkins*, 62 M.J. at 584.    The court moves from defending its

earlier decision to defending the "integrity" of its judges when

it states:

> ***Knowing the process that this court uses to decide the
> cases that come before it, and trusting in the integrity
> and word of the judges who participated in the initial
> decision of this case, we have no doubt that this court
> reached its initial decision after full compliance with
> Article 66(c), UCMJ.***    Nevertheless, in compliance with
> the remand from our superior court, we have now afforded
> the appellant an entirely new review in accordance with
> our statutory mandate.

*Id.* (emphasis added).

On its face, this decision is not the product of "neutral and detached" appellate judges. The lower court has, in effect, vouched for the legal sufficiency of its initial decision. Although it claims to give Appellant "an entirely new review," it is counter-intuitive that the new panel of the lower court could give *unbiased* consideration to assignments of error that their earlier panel found to lack merit, when they "have no doubt that [the first panel] reached its initial decision after full compliance with Article 66(c), UCMJ." *Id.*

Moreover, even if the appellate judges who conducted the review on remand in this case were able to remain neutral and detached despite their ardent defense of their earlier decision and its authors, a reasonable person knowing the history of this case would find that these defensive comments cast suspicion upon the impartiality of these appellate judges.

WHEREFORE, this honorable Court should grant review of this issue.

**IV**

**APPELLANT HAS BEEN DENIED HIS RIGHT TO SPEEDY APPELLATE REVIEW BY EXCESSIVE POST-TRIAL DELAY IN THE PROCESSING OF HIS CASE.** THE LOWER COURT FOUND THAT APPELLANT'S CASE "COULD HAVE BEEN PROCESSED MORE QUICKLY AT VIRTUALLY EVERY STEP OF [APPELLATE REVIEW]." BUT DESPITE MORE THAN FIVE YEARS OF POST-TRIAL PROCESSING, THE

COURT DID NOT FIND THE DELAY EXCESSIVE IN
APPELLANT'S CASE.    THIS FINDING WAS ERRONEOUS.[1]

**v**

**APPELLANT DID NOT VOLUNTARILY ENTER INTO PLEAS
OF GUILTY TO HIS OFFENSES WHERE THE DNA
EVIDENCE HE RELIED UPON IN REACHING HIS
DECISION TO PLEAD GUILTY WAS CREATED BY A DNA
EXAMINER WHO HAS SINCE CONFESSED TO FALSIFYING
DNA RESULTS.** [2]

**Appendix**

A.  *United States v. Jenkins*, No. 200101151 (N-M. Ct. Crim. App.
January 30, 2003) (unpublished op.).

B.  *United States v. Jenkins*, No. 200101151 (N-M. Ct. Crim. App.
November 15, 2005).

                           JEFFREY S. STEPHENS
                           Captain, U.S. Marine Corps
                           Navy-Marine Corps Appellate
                           Review Activity
                           Appellate Defense Division
                           716 Sicard Street, SE, Suite 1000
                           Washington, D.C.  20374
                           Tel:  (202) 685-7292
                           Email:  Jeffrey.s.stephens@navy.mil
                           C.A.A.F. Bar Number: 33272

---

[1] Filed pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.
1982).

[2] Filed pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.
1982).

## CERTIFICATE OF COMPLIANCE WITH RULE 24(d)

1.  This supplement to Appellant's petition for review complies with the type-volume limitation of Rule 24(d) because this brief contains 6,691 words and 878 lines of text.

2.  This reply brief complies with the typeface and type style requirements of Rule 37 because this brief has been prepared in a monospaced typeface using Microsoft Word Version 2000 with 12-point Courier font.

JEFFREY S. STEPHENS
Captain, U.S. Marine Corps
Navy-Marine Corps Appellate
Review Activity
Appellate Defense Division
716 Sicard Street, SE, Suite 1000
Washington, D.C.  20374
Tel:  (202) 685-7292
Email:  Jeffrey.s.stephens@navy.mil
C.A.A.F. Bar Number: 33272

27

**Certificate of Filing and Service**

I certify that the original of the foregoing were mailed to this Court on April 25, 2008.

Troy B Jenkins
1409 Lenevar Dr West
Charleston SC 29407-5118
843 330-0268